PEOPLE, PLAINTIFF AND APPELLEE, *v.* MATOS ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in a Prosecution for Murder in the First Degree.

No. 1113.—Decided July 15, 1918.

DISMISSAL OF PROSECUTION—WAIVER.—When after the trial has begun a defendant moves for dismissal on the ground that more than 120 days have intervened between the filing of the information and the calling of the case for trial, he will be considered as having waived his right to that plea.

ID.—DELAY IN TRIAL.—The question in this case is not the hardship that the delay in the trial may have worked upon the defendant, but whether the court had good grounds for ordering a continuance.

MURDER—INFORMATION—ROBBERY.—When the information charges that the death was caused by the defendants in an unlawful and wilful manner, with malice aforethought and with fixed and deliberate intent, by waylaying and attacking the deceased treacherously, it charges murder in the first degree although it does not allege that the death was caused while committing a robbery, and it may be proved at the trial that the defendants killed the victim while they were committing a robbery.

ID.—JURISDICTION.—The jurisdiction of a court in a case of murder is not determined by the place where. the death occurred, but by the place where the wound which caused the death was inflicted.

ID.—INFORMATION.—The allegation that a person was mortally wounded on a certain date and died immediately from the effects thereof is sufficient to show that he died before the information was filed and, therefore, within 120 days from the time the wound was inflicted.

ID.—NEW TRIAL.—When the trial court commits an error, but such error is not shown to be prejudicial, the judgment should not be reversed and a new trial ordered.

ID.—CORPUS DELICTI.—The death and the cause thereof are the only elements which constitute the *corpus delicti,* and in order to justify a conviction these two elements of the *corpus delicti* must be proved and it must be shown then that the defendant is the person who committed the act.

ID.—CHARGE TO JURY.—The fact that the court charged the jury in the present case that the death occurred within a year and a day after the infliction of the mortal wound does not mean that it instructed the jury by those words that the deceased met his death at the hands of another as the result of a criminal act, for the cause of death might have been accidental and not due to a criminal act.

ID.—ID.—APPEAL.—The manner of making the instructions to the jury more specific is by motion to the lower court, and when this is not done the instructions cannot be attacked as insufficient in the appellate court.

ID.—ID.—HOMICIDE.—When the evidence clearly shows that the crime charged is not homicide but murder, the judge is not required to instruct as to the former.

The facts are stated in the opinion.

*Mr. Alfonso Lastra* for the appellants.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Ramón Matos and Domingo Matos were charged in the District Court of Ponce with the crime of murder in the first degree. They were convicted and sentenced to death. and appealed from that judgment to this court. Domingo Matos died during the pendency of the appeal. In this appeal Ramón Matos pleads (1) that the lower court erred in overruling his motion to dismiss the prosecution on the ground that more than 120 days elapsed between the filing of the information by the district attorney and the trial, as he was entitled to such dismissal under clause 2 of section 448 of the Code of Criminal Procedure, reading as follows:

"Sec. 448.—The court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed in the following cases:

"1. *   *   *.

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within one hundred and twenty days after the filing of the information."

The information in this case was filed by the district attorney on September 12, 1915, and the trial was begun on March 9, 1916, more than 120 days having elapsed, therefore, between the two acts. Let us see whether the lower court was justified in overruling the motion.

The motion of the attorney for dismissal in this case was made too late, because the jury had already been impaneled and sworn. In the case of *People* v. *Ayala,* 19 P. R. R. 888, we held that if such motion were made after the trial, or even after the jury had been impaneled, then, according to the decisions of the Supreme Court of California, that right of the accused may be considered as waived by implication; and in the case of *People* v. *Hawkings,* 127 Cal. 372, cited in the said case, this question was finally disposed of as follows:

"There is no duty incumbent on the court to order dismissal un-

der section 1382 unless the defendant demands it  *  *  *; so that
the right, like other statutory privileges of the accused which do not
affect the jurisdiction of the court, may be waived. It is well set-
tled that the impaneling of the jury is part of a trial (*Silcox* v. *Lang*,
78 Cal. 118); the legal jeopardy of the defendant has attached when
a jury has been 'charged with his deliverance,' and the jury stands
thus charged when its members have been impaneled and sworn.
(Cooley's Constitutional Limitations, 6th ed., 399.)   When, therefore,
the defendant here moved for dismissal he had been 'brought to trial,'
and was upon trial, without previous objection that the limit of sixty
days had expired. If he could then raise the objection for the first
time, he could raise it as well on the announcement of the verdict,
or at any other stage of the trial. We are satisfied that the statute
never was designed for such uses, and must hold that defendant
waived its benefit (if he was entitled thereto) by failure to claim it
in proper season. The following cases tend to sustain this conclu-
sion: *People* v. *Bennett*, 114 Cal. 56, 58; *Polack* v. *Gurnee*, 66 Cal.
266; *People* v. *Romero*, 18 Cal. 89; *People* v. *Johnson*, 104 Cal. 418.''

The doctrine quoted would be sufficient to justify this court
in refusing to consider the said assignment of error, but inas-
much as the crime charged is of such a serious nature as
murder with its attendant penalty, we wish to say that there
was good cause for the delay in bringing the defendants to
trial, for the case was set for trial within the 120 days pre-
scribed by the statute; but a few days before the day set the
attorney for the defense moved for the delivery to him of a
pair of trousers and a stone which the district attorney had
taken possession of in another investigation in the same case
in order that the stains thereon might be examined in a
chemical laboratory, and by reason of this motion the court
ordered that these articles, another stone and a club should
be sent to the chemical laboratory at San Juan with instruc-
tions that the examination be made before the day set for
the trial, which was nearly a month distant. A few days be-
fore the day set for the trial the district attorney moved the
court for a continuance because, according to an affidavit of

the chemist charged with the examination of the stains, he was unable to conclude the examination before the day set for the trial, whereupon the court, after hearing the parties and taking into consideration the fact that the chemical examination was being made on motion of the defense and was important in the case, postponed the trial in the hope that the parties would be prepared to produce all their evidence in the interest of justice. It seems to us that these reasons are sufficient to justify the delay, which was to the advantage of the accused, since it was on their motion that the stone and trousers were sent to the chemical laboratory for the examination whose delay caused the postponement of the trial; and although it was the district attorney who moved for a continuance because the examination in which the defense was interested had not been made, there is no doubt that he did so in furtherance of the better administration of justice. Moreover, the order of the court continuing the trial from the day set therefor, like all judicial decisions, is presumed to be just and therefore it was incumbent upon the accused to make a showing in their motion for dismissal of the reasons why the order postponing the trial was without good cause. *People* v. *Parìs*, 25 P. R. R. 103.

While the defendants contend that the delay in the trial weakened their case because an important witness in their behalf died between the two dates set for the trial and they had to submit his testimony to the jury through the mouths of other persons, which in their opinion did not carry the same weight as if given directly, yet the question to be decided is not whether they were prejudiced by the continuance, but whether there was just cause for the postponement ordered by the court, and we have seen already that there was.

On the day of the trial the defense pleaded that the facts set up in the information did not constitute a crime because it did not clearly establish the jurisdiction of the court, and

they now contend that the adverse ruling on that plea was error on the part of the lower court which warrants the reversal of the judgment of conviction, because the facts recited do not charge the crime of murder in the first degree and because the court had no jurisdiction of the case.

The information in this case is for the crime of murder in the first degree and charges that in Guánica, within the judicial district of Ponce, the defendants unlawfully and wilfully, with malice aforethought and with resolute intent to kill Nicolás Quiñones, an old man, for the purpose of committing robbery from his person, lay in wait and treacherously attacked said Quiñones with clubs, inflicting numerous blows which produced his immediate death.

In support of said assignment of error the defense contends that in the form in which the information is drawn up this fact would not constitute murder in the first degree were it not that the information alleges that the murder was committed for the purpose of robbery, but that the allegation of robbery was made in a general manner as a conclusion of law and that the crime of murder can not be charged in that manner because the crime of robbery should have been specified with all the facts constituting the same.

Even though the information had failed to allege that the death was inflicted in committing the crime of robbery, it would be sufficient to charge the crime of murder in the first degree because it alleges that the death of Quiñones was caused by the defendants in an unlawful and willful manner, with malice aforethought and with resolute and deliberate intent, they having lain in wait for and attacked him treacherously. According to section 199 of the Penal Code, murder is the unlawful killing of a human being with malice aforethought, and, according to section 201, it is murder in the first degree when, among other cases, it is perpetrated by lying in wait or treachery. Therefore, even though the information should fail to allege that it was committed while

perpetrating a robbery, a circumstance which makes the killing of a person murder in the first degree, it would charge murder in the first degree and proof could be introduced at the trial to show that the death occurred while perpetrating a robbery. *People* v. *Izquierdo,* 25 P. R. R. 353. So, as the allegation of robbery was not essential, it was not necessary that the information should be more specific than it was.

As to the lack of jurisdiction, the attorney for the appellants contends that it is the occurrence of the violent and criminal death within the district of the court in which the information was filed and not the fact that the blows or wounds causing death were inflicted therein that confers jurisdiction upon it; and having established this, he goes on to state, without giving the question further consideration, that the wording of the information to the effect that Quiñones died immediately is not sufficient to show that he died within the jurisdiction of the court on the date and at the place when and where he received the wounds, facts which he deems essential to confer jurisdiction upon the court. He is mistaken. According to the common law, the accused could be tried in the district in which the death occurred although the wounds had been inflicted in another jurisdiction; but in jurisdictions like ours in which section 8 of the Code of Criminal Procedure provides that the jurisdiction of an offense shall be in the court of the district in which the offense was committed, the jurisdiction is not determined by the place of the death, but by the place where the wounds causing the death were inflicted; therefore it was not necessary to allege the place of the death. Wharton on Homicide, 3d ed., p. 845; 21 Cyc. 835–36. The crime of murder is committed when the fatal blow is struck, the death being a consequence of the blow. *People* v. *Garcia,* 18 P. R. R. 816.

Consequently the words "produced his immediate death" need not be considered as to their sufficiency to show whether

the death occurred at the same place where the wound was inflicted.

As to the time within which the death took place, these words are sufficient to show that it occurred within a year and a day after the infliction of the wound as charged, which is required by law, for, grammatically, they signify a time shortly after the fatal blow- was inflicted. The charge that a mortal wound was inflicted upon a person on a specified date and that the victim died immediately, as alleged in this case, is sufficient to show that he died before the filing of the information and therefore within a year and a day after the date of the infliction of the wound. Wharton on Homicide, 3d ed., p. 842.

In view of the foregoing, the information did not contain the defects attributed to it and we may proceed to consider the other assignments of error.

The appellant complains that the lower court allowed the district attorney to ask witness Narciso Torres the following question: "You knew then that Nicolás Quiñones had been killed?" To which the witness replied: "I knew on a Tuesday that he had been killed, because I heard Dolorito Villa say so." Appellant contends that this question was leading and ir- relevant to show that the death was the consequence of a crime and that he objected to it at the time; that the answer was inadmissible because it was hearsay, and that he moved to strike the same from the evidence.

. Although the question may be deemed leading and the answer hearsay, it was not prejudicial to the defendants and a new trial should not be allowed on that ground, for a physician testified as to the cause of the death of Quiñones that it was caused by the blows appearing on his body which where produced by a blunt instrument which could not have been used by himself but which must have been in the hands of another person. When it is shown that the error is harmless, as is shown in the present case, the judgment should

not be reversed and a new trial ordered. *People* v. *Español,*
16 P. R. R. 203.

The court did not commit error, as claimed by the defend-
ants, in allowing the physician who made the autopsy im-
mediately after the death of Quiñones to refer to the report
he made at that time during the trial which took place nearly
one year thereafter, for this served to refresh the witness's
memory and is authorized by section 154 of the Law of Evi-
dence. The testimony of this witness, which is included in the
transcript in this appeal, shows how farseeing the law has
been in allowing this to be done and how difficult it would
have been for the witness to remember without such report
the many contusions and wounds inflicted on the body of
Quiñones and the series of details contained in his report
which it would have been impossible for him to remember
nearly a year later. The report was not admitted in evidence
and the witness did no more than refer to it. Perhaps he
read many details, but this amounted to nothing more than
oral evidence and the adverse party had an opportunity to
cross-examine him regarding all the matters to which he
testified.

In the fifth ground of appeal counsel for appellant com-
plains that the lower court allowed witness Francisca Matos
to testify regarding admissions of the defendants before the
*corpus delicti* had been proved.

Appellant admits that the death of Nicolás Quiñones, a
human being, had been proved at the time. Although he
claims that the evidence as to whether such death was due
to the criminal agency of another was contradictory, the
testimony of the physician who made the autopsy is sufficient
to show that Quiñones died from the effects of the blows and
wounds inflicted upon him by other hands than his own. This
was enough to prove the *corpus delicti,* or the existence of a
crime, when Francisca Matos was called to testify regarding

the admissions of the defendants. These are the only elements which constitute the *corpus delicti*, for they show the commission of a crime on the person of Quiñones. Wharton's Criminal Law, 11th ed., pp. 437, 439. Therefore, in order that a person may be found guilty of a crime these two elements of the *corpus delicti* must first be shown, and then that the accused is the person who committed it.

This assignment of error was made by appellant's counsel under the erroneous idea that the proof of guilt formed part of the *corpus delicti*.

The sixth ground of error assigned by the appellant reads as follows:

"The lower court erred in not allowing the physician introduced by the defendants to make the analysis of the exhibits in which they were interested, obliging the defendants to submit to the delivery of said exhibits to the official laboratory; and the lower court also erred in this respect in not ordering that the result of the analysis should be communicated directly to the defendants, allowing said evidence to reach them through the agency of the Attorney General and the District Attorney of Ponce, and enabling the prosecution by such irregular procedure to learn the result before the defendants knew of it although the evidence formed part of the defense."

As we stated at the beginning, a few days before the first date set for the trial the defendants moved the court to order the district attorney to deliver to them a certified copy of the testimony of Felipe Quiñones, Dámaso Almodóvar and Demetrio Quiñones, against whom the first investigation of the case was directed; a copy of the warrant of arrest issued against them by the District Attorney of Ponce; a copy of the order for their release, and also for the delivery to them of a stone and a pair of trousers taken from Demetrio Quiñones in order that both articles might be sent to the chemical laboratory for an analysis of the stains upon them, which appeared to be bloodstains, all with the object of showing that the said Quiñones and Dámaso Almodóvar were the exclusive authors of the crime and not the defendants.

After hearing the district attorney the court overruled the motion as to the confessions of Felipe Quiñones and Dámaso Almodóvar because they were not in the possession of the district attorney.  It made no ruling as to the confessions of Demetrio Quiñones and ordered that the articles asked for should be taken by the marshal of the court to the chemical laboratory of this city in order that the stains on the trousers and stone might be analyzed, and that a club and another stone should also be sent to the laboratory for a like purpose.  Counsel excepted to this ruling but did not specify the ground or call the attention of the court to its failure to rule regarding the confessions of Demetrio Quiñones.  Counsel for the defendants also opposed the district attorney's motion to continue the trial because the chemist's report had not been concluded, but we are ignorant as to his grounds. Finally, the trial having been set for March 9, the defendants, on February 28, moved the court to order the clerk to give them a copy of the testimony of Demetrio Quiñones and also a copy of the analysis made of the exhibits.  The analysis had not been received at the time, so the court ordered a telegram to be sent to the Director of Sanitation, requesting that the same be sent not later than March 7.  The analysis was sent to the district attorney and he delivered it to counsel for the defendants on the same day that he received it.

The appellant complains that although the stone and the pair of trousers formed part of the evidence for the defense, they were, nevertheless, utilized and introduced at the trial by the prosecution.

The appellant bases his assignment of error on the wrong premise that the stone and pair of trousers referred to were exhibits for the defense, whereas, having been taken possession of in an investigation made of the death of Nicolás Quiñones, they were the exhibits of the prosecution, although counsel for the accused understood that they could be used for the defense.  Besides, the defendants have no ground for

complaint, for the said exhibits were produced at the trial together with the analysis of the stains thereon, which was the object for which they were claimed.

As to the analysis made at the laboratory, we do not see, nor have we been shown, how it could prejudice the appellant.

In regard to the testimony of Demetrio Quiñones, we are also unable to see what hardship was caused the appellant, since this was also introduced at the trial.

The second ground of appeal reads as follows:

"The lower court erred in allowing the District Attorney of Ponce to explain to the jury during his testimony as witness for the prosecution, over the objection of the defense, what conclusions he reached in his investigation of the death of Nicolás Quiñones in connection with the former defendants, Darío Almodóvar, Demetrio Quiñones and Felipe Quiñones, because, according to the court, the district attorney in Porto Rico has all the attributes of a grand jury."

The district attorney testified at the trial that he had received the report of an examination of three prisoners named Felipe Quiñones, Dámaso Almodóvar and Demetrio Quiñones, who had been arrested in connection with this case; that he put several questions to the last named, who was represented as having confessed the crime, related his answers and the manner in which they were given, and also stated the denial of the others and their explanations, and that the object of his examination was to see whether any of their answers were contradictory. At this point counsel for the defense objected on the ground that the district attorney was about to state the conclusion he reached in an investigation against other persons, and was overruled by the court because it was the best evidence, and also because the district attorney has the attributes of a grand jury to decide whether or not there is probable cause for filing informations.

Before going further we should state that the investigation was conducted first against Demetrio Quiñones, Dámaso Almodóvar and Felipe Quiñones as a result of the confession of the first named and of his charge against the other

two, but that about fifteen days later they were released and
another investigation made against Ramón and Domingo Ma-
tos, during which both confessed that they committed the
crime.

It is true, as contended by counsel for the appellant and
according to section 19 and subdivision 3 of section 35 of the
Law of Evidence, that when a district attorney testifies at a
trial he is not allowed to make statements which another
witness would not be allowed to make, or express his opinion,
even as a member of a grand jury would not be allowed to
express his in the courts where such institution exists, re-
garding whether or not there was probable cause for making
charges against certain persons; but in the present case the
district attorney did not express his opinion regarding the
absence of grounds for charging other persons with the crime
being prosecuted here and although his testimony clearly was
hearsay and the court acted under an erroneous theory in
allowing the same, nevertheless it appears that it was harm-
less because the stand taken by counsel for the defendants
throughout the entire trial, and even before the trial, was
that his clients were not guilty because the death was caused
by the three persons first arrested, and they themselves of-
fered this evidence later.

If the accused had not introduced the evidence against
Almodóvar and the others at the trial, it would have been
error on the part of the district attorney and the court to
allow the introduction of the evidence of Demetrio Quiñones,
thus anticipating evidence in rebuttal of the theory main-
tained by counsel for the defense.

In the eighth assignment of error the appellant complaints
that the district attorney was allowed to read the testimony
given by Demetrio Quiñones before him.

This assignment of error is based exclusively on the
grounds upon which the judge made his ruling and not upon
the ruling itself; hence if the ruling is just we shall not con-
sider its grounds.

When the district attorney offered in evidence the written statement of Demetrio Quiñones the defense objected on the ground that many other elements would have to be proved before it could be properly admitted. The court admitted the statement over this vague form of objection and there-upon the defense particularized its grounds of objection as follows: That it had not been proved that Demetrio was dead, or that his statement was spontaneous, or that the cross or signature affixed thereto was his. All of these elements, however, were established by the testimony of the district attorney and the death was proved later, so that this defect was corrected and the admission was lawful.

Although it is alleged for the first time on appeal that the statement was inadmissible because Demetrio Quiñones made it in his own favor, we wish to state that this rule applies to self-serving statements by defendants (12 Cyc. 426), and Demetrio Quiñones was not a defendant in this case.

The confessions made before the municipal judge by defendants Ramón and Domingo Matos were offered in evidence at the trial, but the appellant maintains in his ninth assignment of error that they were admitted without due process of law.

When the district attorney offered them the defense objected on the ground that the marks affixed thereto by the defendants had not been properly identified, and also because it was not shown in the written statements that the defendants were advised of their right not to testify.

Not only does it appear from the testimony of Municipal Judge Quiñones, sitting at Ponce at that time, that he gave this and other warnings to the defendants and that the mark or cross made at the foot of each of the confessions was made by the respective witness, but also that it is stated at the beginning of each confession that such warnings were given them. Hence the objection made by the defense to the admission of said confessions was groundless and the court did not commit the error assigned.

Other grounds of objection are now alleged which were not made before the judge and which are not tenable.

Although in the tenth assignment of error the appellant claims that the lower court erred in allowing the district at-torney to introduce evidence after the defense had rested, this not only lies in the discretion of the court for the further-ance of justice but is authorized by clause 5 of section 233 of the Code of Criminal Procedure, as amended by Act No. 11 of March, 1909, p. 137, and also by section 234. In like man-ner, section 149 of the Law of Evidence and District Court Rule No. 24 empower the judge to regulate the order of the evidence.

Again, what the district attorney did was to conclude the introduction of evidence begun before he rested his case.

The eleventh assignment of error alleges that the court should not have accepted the verdict of the jury because it is contrary to the evidence and to the law.

We disagree absolutely with the appellant's contention.

The verdict is not contrary to the evidence. The evidence showed that Nicolás Quiñones died on Monday, June 28, 1915, as a consequence of various blows and wounds inflicted with clubs and stones by hands other than his own; that on that day he left the property of which he was foreman, as he was accustomed to do on every Monday, to go to Yauco for money with which to pay the laborers; that while in Yauco he paid some of the laborers and was returning with a part of the money to pay others on his property; that no money was found on his person after his death, but that the charcoal-makers claimed and received $36.96 which the said Quiñones was to have paid them; that at the beginning of the investiga-tions into the cause of his death Felipe Quiñones, Dámaso Almodóvar and Demetrio Quiñones were arrested upon a charge made by the last named against the other two and upon his own confession, and upon the statement of an old man and a body who declared they had seen the three passing along

the road where Nicolás Quiñones was found dead; that later Demetrio Quiñones testified before the district attorney and before the municipal judge of Ponce that it was not true that he, his brother and Almodóvar had committed the crime and that he had made the confession because of the threats of the police; that although Demetrio Quiñones declared in his preliminary statement that his trousers, which had been seized, contained stains caused by the blood of the deceased Quiñones, it was found upon a chemical analysis that said stains were not caused by blood but by vegetable matter; that a club which was seized in the house of the old man and boy and which the latter stated had been handed to him by Demetrio Quiñones and was the weapon with which they had killed Nicolás Quiñones and which apparently contained bloodstains with human hair, was also found, upon chemical analysis, not to contain bloodstains but stains caused by the rosin of the wood itself, nor was hair attached thereto, but only fibres of the wood itself. So much as to the participation which at the beginning Felipe Quiñones, Demetrio Quiñones and Almodóvar appeared to have had in the death charged in this case.

On the other hand, defendants Ramón Matos and Domingo Matos confessed the crime under oath before different authorities, each accusing the other and furnishing data to the district attorney to corroborate the truth of their statements, such as that with the money they had taken from Nicolás Quiñones after his death they had paid certain debts they owed and bought provisions; that the club with which they first attacked the deceased was of *tachuelo* and that they had thrown it into a place near the scene of the crime, where a *tachuelo* club was actually found; that a stone with which they confessed they had inflicted blows on the head of Quiñones was found really to contain bloodstains and hair similar to that of the deceased, according to a microscopic examination made thereof; that not only did Ramón and Do-

mingo Matos confess their crime before the judicial author-
ities, but they also confessed the same to the sister of one
of them named Francisca Matos and subsequently to Carmelo
Medina, Domingo's brother-in-law. It also appears from the
evidence that the main object of the crime was to revenge
themselves on Nicolás Quiñones for discharging them from
the property under his charge and that they lay in wait to
kill him.

This evidence is sufficient, without more, to support the
conclusion of the jury regarding the guilt of Ramón and Do-
mingo Matos, especially when it is considered that the jury
not only heard the evidence against the Matos defendants,
but also that which at the beginning appeared to exist against
the two Quiñones and Almodóvar, and in spite of the latter
returned a verdict against Ramón and Domingo Matos.

The contention in this assignment of error that the verdict
is contrary to law is not argued by the appellant, but mani-
festly it is groundless.

Finally, it is maintained that the lower court erred in its
instructions to the jury, as follows:

A. Where it says "so that it is proved, because it is ad-
mitted, that Nicolás Quiñones died within a year and a day
from the time he received the wounds causing his death."

B. In not explaining to the jury the rules in force for the
adjustment of contradictory evidence.

C. In omitting to give specific instructions regarding
homicide and, on the other hand, expressly saying that the
only verdicts which the jury could give, in keeping with the
evidence introduced in this case, were for murder in the first
degree; murder in the first degree with extenuating circum-
stances; murder in the second degree, and not guilty.

D. In omitting to instruct the jury that the confession of
Demetrio Quiñones was subject to the same rules which the
court explained to the jury to enable them to give the proper

weight to the confessions of Ramón Matos and Domingo Matos.

In regard to case A, the court instructed the jury that Quiñones had died within a year and a day from the infliction of the wounds that caused his death because the defense admitted that he had died on June 28, 1915, it being a fact that the wounds could not have been inflicted a year and a day previously because the wounds appeared to be recent, the body was not decomposed, and there was evidence that the deceased was living on the morning of the said 28th day. The fact that the court stated that Quiñones had died within a year and a day after receiving the wounds which caused his death does not mean, as contended by the appellant, that it instructed the jury by those words that death had been caused by hands other than those of the deceased as the result of a criminal act, for the cause of the death might not have been due to a criminal but to a casual act.

As to point B, the appellant can not now be heard to complain that the instructions were not altogether so specific as he might desire in regard to the contradictory evidence, inasmuch as he failed to avail himself of the right to which he was entitled to ask the court to give such instructions and to present them in writing, and this is not the proper time to assail them as being insufficient. *People* v. *Robles,* 10 P. R. R. 470; *People* v. *Boria,* 12 P. R. R. 166; *People* v. *Llauger,* 14 P. R. R. 534; *People* v. *Español,* 16 P. R. R. 203.

The objection made under letter C is groundless, for since the evidence clearly shows that the case did not involve the crime of homicide but of murder, the judge was not required to instruct the jury as to homicide. *People* v. *Flores,* 17 P. R. R. 166; *People* v. *Alméstico,* 18 P. R. R. 314; *People* v. *Lasalle,* 18 P. R. R. 410.

D. Appellant bases his contention in this assignment on the premise that the statement of Demetrio Quiñones is a confession, which is not true since the fact that it was admit-

ted in a prosecution against Ramón and Domingo Matos, in which Demetrio Quiñones was not charged with any crime, inhibits this theory and shows that it was merely the testimony of a witness. In any event the accused did not move the court to instruct in the manner in which he now claims it should have done.

After rendering the judgment in this case under which the two defendants were sentenced to death, Act No. 36 was passed on November 30, 1917, abolishing the death penalty in Porto Rico until April 30, 1921, and given a retroactive effect applicable to convicts sentenced to death and whose sentences were not executed. And in amending section 202 of the Penal Code it is provided that every person guilty of murder in the first degree shall be punished by confinement in the penitentiary for life. Therefore, applying the said act to Ramón Matos, since Domingo Matos has died, the judgment appealed from should be modified by sentencing the said defendant to confinement in the penitentiary for life for the crime of murder in the first degree.

With the said modification the judgment rendered against Ramón Matos should be

<em>Affirmed.</em>

Chief Justice Hernández and Justices Wolf, del Toro and Hutchison concurred.